IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs April 17, 2002

## RONALD E. WALKER v. SHERRY K. WALKER

**Appeal from the Circuit Court for Hamilton County**
**No. 00D612      Samuel H. Payne, Judge**

**FILED MAY 29, 2002**

**No. E2001-01759-COA-R3-CV**

Ronald E. Walker ("Husband") and Sherry K. Walker ("Wife") were divorced in 2001, pursuant to a final judgment. The parties were awarded joint custody of their then almost sixteen year old child ("Child") with Husband serving as the primary physical custodian of the Child. The Trial Court awarded Wife alimony *in futuro* and ordered Wife to pay child support. Husband appeals the type of alimony awarded to Wife, the amount of the alimony award, and the amount of Wife's child support obligation. We affirm, as modified, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed, as Modified; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

John R. Morgan, Chattanooga, Tennessee, for the Appellant, Ronald E. Walker.

Sherry B. Paty, Chattanooga, Tennessee, for the Appellee, Sherry K. Walker.

# OPINION

## Background

In March 2000, after almost 17 years of marriage, Husband, age 47 at the time of trial, filed a Complaint for Divorce, alleging alternative grounds of inappropriate marital conduct and irreconcilable differences. Wife, age 44 at the time of trial, filed an Answer and Counter-Complaint for divorce alleging inappropriate marital conduct on the part of Husband and irreconcilable differences. The parties have one minor Child who, at the time of trial, was nearly 16 years old.

The record on appeal shows that Husband is a long-time employee of TVA and in 2001, had a base yearly salary of $51,700. Husband's income, however, was substantially higher due to his overtime pay. The Trial Court found Husband's average yearly income from 1997-2000, to be $62,000 per year.

The record shows that at the time of trial, Wife had been employed by DuPont for nearly one year and had a yearly gross income of approximately $23,000.[1] Prior to working at DuPont, Wife was employed by Walmart, a local church, and a temporary employment service. Wife testified her current job at DuPont was the best job she ever had. Wife also testified that, during the parties' 16-year marriage, she has had 11 surgeries. Wife currently takes medication for diabetes, high blood pressure, and thyroid problems. Wife testified her health problems have interfered in the past with her ability to work. The record on appeal does not show the education level reached by Husband or Wife.

Both parties, in their respective Income and Expense Statements contained in the record on appeal, claimed a monthly deficit after their expenses were deducted from monthly net income. Wife claimed a monthly deficit in the amount of approximately $940, while Husband claimed a monthly deficit of $370. Both Husband and Wife, in their Income and Expense Statements, claimed a monthly payment for a 1999 mini-van in the amount of approximately $720.

Trial was held in April 2001, and thereafter, the Trial Court entered a Final Judgment granting both parties a divorce without specifying the grounds. The trial transcript shows the Trial Court, in awarding alimony *in futuro* to Wife, found that the disparity in the parties' incomes was "just too great." Wife's alimony *in futuro* totaled $500 every two weeks, or approximately $1,080 per month. The Trial Court also awarded Wife one-half of Husband's TVA 401(k) and annuity accounts and one-half of Husband's monthly pension.[2]

---

[1] For simplicity's sake, we use round numbers in this opinion as much as possible.

[2] Wife's portion of Husband's monthly pension totaled approximately $380 per month which she is to receive once Husband becomes eligible to begin receiving pension benefits or reaches the age of 65.

The Trial Court, in its Final Judgment, also awarded Husband primary residential custody of the Child, and ordered Wife to pay child support in the amount of $323 per month. The Final Judgment incorporated, by reference, a Permanent Parenting Plan which provided that both parties were to serve as joint residential custodians of the Child and contemplated that the "[Child] shall reside with both parents which shall consist of equal time with both parents to coincide with their work schedules."

The Trial Court awarded the parties' home to Husband but assigned Husband the first and second mortgages on the house. The Trial Court also awarded a judgment lien in the amount of $11,000 in favor of Wife to represent her equity in the parties' home.[3] Husband also was awarded the parties' automobiles with the exception of the parties' 1999 mini-van. The Trial Court ordered the mini-van to be sold or traded and ordered Husband to assist Wife in finding another vehicle for her use.

Husband appeals. We affirm, as modified.

### Discussion

On appeal and although not exactly stated as such, Husband raises the following issues: (1) whether the Trial Court erred in awarding alimony *in futuro* instead of rehabilitative alimony to Wife; (2) whether the Trial Court erred in awarding Wife alimony in the amount of approximately $1,080 per month; and (3) whether the Trial Court erred in setting Wife's child support obligation since it failed to take into account Wife's alimony income. Wife raises no additional issues on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

This Court has held that "[t]rial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id.* A trial court's determination regarding spousal support generally will not be altered by this Court unless the trial court abused its discretion. *Robertson v. Robertson*, E2000-01698-SC-R11-CV, 2002 Tenn. LEXIS 172, at * 11 (Tenn. Apr. 4, 2002).

---

[3] Husband was ordered to pay Wife $11,000 for her equity in the parties' home upon the Child's graduation from high school.

When determining whether a spouse should receive support, how much support, and what type of alimony is warranted, trial courts are to apply the factors outlined in Tenn. Code Ann. § 36-5-101(d)(1), which provides:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

While all relevant factors must be considered when setting the amount of an alimony award, need and the ability to pay are the critical factors. *Anderton v. Anderton*, 988 S.W.2d at 683. Discussing the intent behind alimony, our Supreme Court has held:

"the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce."

*Burlew v. Burlew*, 40 S.W.3d 465, 470-71 (Tenn. 2001) (quoting *Anderton v. Anderton*, 988 S.W.2d at 682).

Although "the legislature has demonstrated a preference for an award of rehabilitative alimony[,]" the relevant statute for alimony, Tenn. Code Ann. § 36-5-101(d)(1), does contemplate, under the appropriate circumstances, a long-term award of alimony, or alimony *in futuro*, providing:

Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors . . . then the court may grant an order for payment of support and maintenance on a long-term basis . . . .

*Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). "[T]he purpose of [alimony *in futuro*] is to provide financial support to a spouse who cannot be rehabilitated." *Burlew v. Burlew*, 40 S.W.3d at 471.

Husband's issues on appeal regarding the Trial Court's award of alimony to Wife concern both the type and the amount of alimony. We first will consider the issue regarding the type of alimony the Trial Court awarded to Wife.

Recently, our Supreme Court issued its opinion in *Robertson v. Robertson*, regarding the issue of alimony in a case which had facts similar to this matter. *Robertson v. Robertson*, 2002 Tenn. LEXIS 172, at * 12-15. Mr. Robertson, like the Husband in this matter, was employed by TVA and his average yearly income was approximately $60,000. *Id.*, at * 13. Mrs. Robertson had a yearly income similar to that of the Wife's in this matter, earning approximately $22,000. *Id.*, at * 12. Accordingly, the Robertsons had a disparity in income commensurate with that of the parties in this matter.

In *Robertson*, our Supreme Court found that the trial court's award of rehabilitative alimony to Mrs. Robertson was not an abuse of discretion. *Id.*, at * 15-16. The *Robertson* Court reversed this Court which found Mrs. Robertson should be awarded alimony *in futuro* since she "could not be rehabilitated to a reasonable standard of living, viewed in the context of her pre-divorce standard of living." *Id.*, at * 4. The *Robertson* Court stressed the importance of considering *every* relevant factor provided by the alimony statute and the application of the statute's factors on a case-by-case basis. *Id.*, at *7. The Court recognized the legislature's preference for rehabilitative alimony and discussed the purpose of rehabilitative alimony as follows:

> [R]ehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training. . . . ("Rehabilitative alimony serves to support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'"). It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment. . . .

*Id.,* at * 8 (citations omitted).

The *Robertson* Court, in finding that the trial court's award of rehabilitative alimony to Mrs. Robertson was not an abuse of discretion, reviewed Mrs. Robertson's work history as a full-time homemaker and part-time substitute teacher and her recent attainment of a 4-year degree in education. *Id.*, at * 15-16. The Court found significant that Mrs. Robertson anticipated beginning her teaching career with a salary of approximately $22,000, stating that "[i]n light of [Mrs.] Robertson's college education and new employment, we agree that [Mrs.] Robertson, though economically disadvantaged, is capable of rehabilitation." *Id.* In addition, the Court found that the rehabilitative alimony could assist Mrs. Robertson in obtaining a master's degree to increase her earning capacity. *Id.*, at * 16.

We believe the facts of *Robertson* are readily distinguishable from the facts of this case. Wife's circumstances show that, unlike the economically disadvantaged spouse in *Robertson,* it is highly unlikely that Wife could rehabilitate herself through further education or training. According to *Robertson*, the Trial Court should not have relied as heavily as it did upon just one of the factors of the alimony statute, the disparity in the parties' incomes. *See id.*, at * 7. The proof in the record, however, shows that other factors establish Wife's need for alimony *in futuro.* While we acknowledge the legislature has expressed a preference for rehabilitative alimony in Tenn. Code Ann. § 36-5-101(d)(1), the record on appeal shows that, due to Wife's earning history, age, and health, Wife's possibilities to rehabilitate herself to increase her income are limited. *See* Tenn. Code Ann. §§ 36-5-101(d)(1)(A), (B)& (E). Accordingly, after considering all relevant factors provided by the alimony statute in light of the facts and circumstances presented by the record, we hold the Trial Court's award of alimony *in futuro*, as opposed to rehabilitative alimony, was not an abuse of

discretion. *See Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Robertson v. Robertson*, 2002 Tenn. LEXIS 172, at * 11.

We next consider Husband's arguments on appeal that the amount of alimony awarded to Wife was an abuse of discretion and that Wife's alimony income should be counted as "gross income" for purposes of calculating her child support obligation. Since the amount of alimony Wife receives may impact her child support obligation, we will consider these issues together.

With respect to Wife's child support obligation, the record shows the Trial Court apparently did not treat Wife's alimony as income when setting her child support obligation at $323 per month. The Trial Court found that Wife's annual yearly gross income was $22,992, and the Child Support Guidelines ("Guidelines") Chart shows a child support obligation of $323 per month for one child for that amount of yearly gross income. The Guidelines clearly provide that when calculating the obligor's child support payment, alimony is included in the definition of "gross income." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a). Accordingly, we hold it was error for the Trial Court to fail to include Wife's alimony in her gross income when calculating her child support obligation. Due to the effect any change in the amount of alimony might have upon Wife's child support obligation, we must discuss the issue regarding the amount of alimony awarded to Wife before further considering Wife's child support obligation.

Husband contends the amount of alimony awarded to Wife, approximately $1,080 per month, constitutes an abuse of discretion and argues that after he pays alimony each month, he has a deficit. The record on appeal shows that after Husband receives child support from Wife in the amount of $323 and after he pays $1,080 in alimony to Wife, he has a monthly deficit of $410 per month. The record shows that Wife, on the other hand, has approximately $540 per month remaining after she pays child support of $323 and receives alimony of $1,080 per month.

As discussed, while each factor of the alimony statute must be considered, need and ability to pay are the most important considerations. *See Anderton v. Anderton*, 988 S.W.2d at 683. The record on appeal shows that while Wife has shown a need for alimony *in futuro*, Husband does not have the ability to pay Wife the amount of alimony ordered by the Trial Court. We find, after considering all relevant factors, the amount of alimony should be reduced to $750 per month. *See* Tenn. Code Ann. §§ 36-5-101(d)(1)(H) & (L). This reduction in Husband's alimony obligation means that after Wife's child support obligation is taken into account, each party will have some excess income remaining and will not face a monthly deficit. Therefore, the portion of the Final Judgment regarding the amount of alimony awarded to Wife is modified to reflect an award of alimony *in futuro* of $750 per month.

Since, as discussed, alimony is included in the Guidelines' definition of "gross income," we now consider whether Wife's child support obligation should be modified to reflect the inclusion of alimony. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a). Wife's receipt of alimony in the amount of $750 per month increases her total yearly gross income to approximately

$32,000, or approximately $2,670 per month. The Guidelines Chart provides that Wife's child support obligation for one child is $443 per month.

Wife contends on appeal, however, that her child support obligation of $323 per month set by the Trial Court was not error because of the equal parenting time the parties have with the Child. Wife's argument is, in essence, that her above-average visitation with the Child justifies a downward deviation from the Guidelines amount. The Trial Court, in its Final Judgment, however, did not state it was deviating from the Guidelines amount to take into consideration Wife's shared parenting time. Instead, the Trial Court applied the Guidelines to Wife's annual yearly gross income excluding alimony rather than deviating downward from the Guidelines amount. The Permanent Parenting Plan does contemplate that the Child will spend equal amounts of time with the parties to coincide with the parties' work schedules. Husband, however, testified the Child spends 90% of his time at Husband's home. Wife testified that while she is living separately from Husband and the Child, she spends a considerable amount of time with the Child and has stayed overnight with the Child at Husband's home. Wife also testified she purchases food and clothing for the Child.

The Guidelines "are a minimum base for determining child support obligations." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(5). Tenn. Code Ann. § 36-5-101(e)(1)(A) provides a rebuttable presumption that the Guidelines amount shall be applied by the trial court. *See also* Tenn. Comp. R. & Regs., ch. 1240-2-4-.01(2). Trial courts, however, have limited discretion to deviate upward or downward from the Guidelines. *Bowers v. Bowers*, 956 S.W.2d 496, 499 (Tenn. Ct. App. 1997). Tenn. Code Ann. § 36-5-101(e)(1)(A) provides, in pertinent part, as follows:

> If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the . . . [Guidelines] would be unjust or inappropriate . . . in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the [Guidelines] would be unjust or inappropriate shall state the amount of support that would have been ordered under the [Guidelines] and a justification for the variance from the [Guidelines].

Tenn. Code Ann. § 36-5-101(e)(1)(A); *see also* Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(7). Our Supreme Court in *Jones v. Jones*, 930 S.W.2d 541 (Tenn. 1996), outlined the limited circumstances in which trial courts may deviate downward from the Guidelines' amount which include instances "where the child(ren) spend more visitation time with the obligor than is assumed by the [G]uidelines. . . ." *Id.* at 545 (citing Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(2)(b)).

Wife testified she spends a lot of time with the Child but did not quantify how much time. Husband, who has physical custody of the Child, testified that the Child spends 90% of his time at Husband's home. While Wife stays overnight some with the Child at Husband's home, the Guidelines contemplate overnight visitation with the non-custodial, obligor parent in joint custody arrangements such as the parties'. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(6). In addition,

Husband has actual physical custody of the Child, and the record shows that Wife, while exercising overnight visitation with Child, is doing so at Husband's home instead of her own residence. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(6) (stating that "[t]hese [G]uidelines are designed to consider the actual physical custody of the child(ren), regardless of whether . . . such an arrangement is ordered to be joint custody or split custody"). Due to the lack of proof in the record justifying a downward deviation from the Guidelines amount and the lack of written findings by the Trial Court in the Final Judgment regarding the variance, we hold that Wife's child support obligation should equal the Guidelines amount of $443 per month based upon her income from her DuPont job and her receipt of alimony. Accordingly, the portion of the Trial Court's Final Judgment regarding child support is modified to include Wife's alimony in her income, thereby resulting in a child support obligation of $443 per month.

### Conclusion

The Trial Court's judgment regarding the amount of alimony is modified by setting alimony at $750 per month. The portion of the judgment regarding the amount of child support is modified by setting child support at $443 per month. The Trial Court's judgment is affirmed, as modified. This cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed equally against the Appellant, Ronald E. Walker, and his surety and the Appellee, Sherry K. Walker.

_____
D. MICHAEL SWINEY, JUDGE